# Weller's Appeal.

1. A judgment was entered in favor of A. against A., B. & C., on a joint and several judgment note drawn to A.'s order and signed by A., B. & C. The purpose of the note was to enable B. to procure money from A. It appeared that A.'s name was on the bottom of the note, as one of the makers, by mistake, and that C. made no inquiry about it at the time of signing the note. The court, on motion of A., under the Acts of May 4th 1852 (P. L. 574) and April 12th 1858 (P. L. 243), ordered the record to be amended by striking off A.'s name as defendant; leaving the judgment in his favor against B. & C. C. afterwards claimed that he had put his name to the note at B.'s request, receiving no benefit therefrom, and relying upon A.'s solvency and B.'s statement that both A. & B. being on the note before him, he was entirely safe. Upon an appeal from a refusal of the court to grant a petition which recited the above facts, and prayed that the judgment be opened and C. allowed to defend:

*Held,* That the amendment was authorized by the Acts cited. That in the absence of collusion between A. and B., or of fraud practiced upon C., he was not entitled to the relief prayed.

2. Although, in the above case, the note drawn by A. to his own order was regular in itself, yet, when B., also a maker, brought it to C., and asked him to become surety for him (B.) upon it; this was enough to put C. upon inquiry, by which he could have ascertained the purpose of the note.

3. The fact that C. was an illiterate German and understood English imperfectly, was immaterial, because he was not obliged to sign the instrument unless he understood it, but having signed, without asking to have it read to him, he was bound by it.

May 14th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

APPEAL from the court of Common Pleas of *York county:* Of January Term 1883, No. 313.

Appeal of Henry Weller from a decision of said court, refusing to open a judgment entered upon a warrant of attorney, and to let the defendant into a defence.

The following were the material facts: On April 2d 1879, judgment was entered in favor of John Keener against John Keener, "David?" Miller and Henry Weller, on the following instrument:—

" $500.                              York Pa. April they first 1874
          We or Eathers of us          Promise to pay to the
order of John Keener the sum off five
                                        Hundred
                                        Dollars
Without defalcation, for value received
          [Then follows warrant to confess Judgment.]
     Witness      hand and seal this      day of      A. D. 187
          Witness :                         JOHN KEENER [Seal.]
                                            DANIEL MILLER
                                            HENRY WELLER."

On December 19th 1881, the clerical error in the entry of
the judgment was corrected, by amendment, and the name
" David" changed to " Daniel" Miller.

Upon motion of John Keener, July 11th 1882, the court
ordered his name stricken from the judgment as defendant,
leaving it in the name of John Keener v. Daniel Miller and
Henry Weller. This action of the court was based on the Act
of May 4th 1852 (P. L. 574) and the supplement thereto, of
April 12th 1858 (P. L. 243), providing for the striking out of
parties, plaintiff or defendant, in a suit—by amendment—when
necessary in order to try a cause on its merits.

Execution was issued on this record, July 15th 1882, and,
Miller being then insolvent, the real estate of Henry Weller
was levied upon thereunder. Whereupon Weller filed a peti-
tion, which, after setting forth the above facts, prayed that the
judgment might be opened and that he might present his de-
fence, which he stated to be as follows : " That Henry Weller,
the petitioner, was induced to sign his name to the paper, on
which the said judgment was entered, by reason of the misrep-
resentation of John Keener in allowing his name to appear on
the said paper as principal obligor ; and further by the repre-
sentations of Daniel Miller who pointed out to the petitioner
the names of John Keener and the said Daniel Miller signed
above the place where the petitioner was requested to sign, at
the same time assuring the petitioner that he could not be
harmed, because the said John Keener and the said Daniel
Miller were before him. That he never contracted, or intended
to contract, as would appear from the judgment record, after
the name of John Keener had been stricken from the note.
That the loan from John Keener to Daniel Miller was usurious,
which fact was not disclosed to the petitioner, nor was he in-
formed until seven years afterwards that John Keener had
loaned Daniel Miller any money on the said note. That for
several years after the note became due the said Daniel Miller
was solvent and able to pay and did offer to pay the said debt

[Weller's Appeal.]

to John Keener; and the said John Keener neglected to collect the same until after Miller had become insolvent."

It was further alleged that the plaintiff, a German, was exceedingly illiterate, and was only able to read or write English very imperfectly.

A rule to open the judgment, based on this petition, was discharged by the court, and the prayer of the petitioner denied, WICKES, J., delivering the following opinion: "If the defendant, Henry Weller, occupied the position of a guarantor, instead of a surety, in the note upon which this judgment was entered, there would be much force in the contention that the delay of the plaintiff, in proceeding to collect it until after the insolvency of Daniel Miller, the principal, is fatal to his claim against the surety. It is clear law that the contract of guaranty is conditional on the creditor's diligence to collect the debt, but that mere delay will not release a surety; to be released, he must demand proceedings with notice that he will not be bound if they are not instituted: 2 P. F. S. 440, 525; 3 Penn. R. 437; 9 P. F. S. 356. There is no evidence that such a demand was ever made upon the plaintiff, and mere forbearance or delay will not operate to discharge the surety from his liability. Nor would the fact that Miller paid the plaintiff a bonus for the use of the money, or at times more than the legal rate of interest, discharge the surety, unless there was evidence of some change in the contract. Of this, however, there is no evidence; indeed it is denied by the plaintiff that he ever charged usurious interest, and that whatever was paid above six per cent., was when Miller voluntarily paid him something for waiting when the interest became due. But there is nothing to show that the original contract was changed, and without this the surety would not be released: 9 Ca. 106. Nor does the evidence submitted in support of the application show such "mistake, misrepresentation, and laches," either on the part of the plaintiff, or principal, as entitles the defendant, Weller, to be released from his liability.

"It is not pretended that any fraud was practised upon him to induce him to sign this note. But it is said he was misled by the appearance of Keener's name at the foot of the note, and supposed himself protected by Keener's liability. He was asked to sign the note by Miller, who told him he wanted to borrow some money. Whether he told him from Keener or not is perhaps doubtful. Weller says not. Miller says 'Yes' and 'No.' But Weller signed a joint and several note as surety for Miller, and the note showed on its face that John Keener was the payee. His name appeared, it is true, by mistake, as maker also; but the error was apparent on the face of the note, and the case is absolutely destitute of evidence to show collusion

between Keener and Miller to mislead him. Keener was not present when Miller signed the note and never seems to have had any communication with him on the subject; he ought not therefore to be affected by what took place between Miller and Weller at the time: Graves *v.* Tucker, 18 S. & M. 9. But apart from this, if, at the time of signing, Weller chose to rely upon what Miller affirmed as to the note he cannot now avail himself of the mistake, as it was a matter entirely open to his own inquiry : 10 Ca. 365.

"It is said he is an illiterate man and only imperfectly understood English. The second resolution in Thoroughgood's case, was that an illiterate man need not execute a deed before it is read to him in a language he understands; but if he do, without desiring it to be read, the deed is binding : 17 P. F. S. 389. Rule discharged."

Thereupon Weller took this appeal, assigning for error the action of the court in ordering Keener's name stricken from the record as defendant ; and in refusing Weller's petition to open the judgment.

*H. C. Niles,* for appellant.—Weller was an ignorant, weakminded man, over whom Miller, who was his cousin, had great influence, and he signed this paper under the promise that he would be protected from liability by the name of John Keener. The action of the court in striking Keener's name from the record as defendant, in effect reformed the contract and changed the legal rights of the appellant. There is no authority for this under the Acts relied upon. Amendments depriving the opposite party of any valuable right should not be allowed : Kille *v.* Ege, 1 Norris 110. Keener did not cause judgment to be entered until April 2d 1879, and in the mean time other more diligent creditors had consumed with their executions all the property of Miller, to an amount several times greater than this judgment. Miller also testified that he paid 8 per cent. interest and at one time caused Keener to reduce the rate by threatening to pay the note. We believed that the cumulation of these equities entitled us to relief, or at least entitled us to have a jury pass upon the facts. This note and warrant as it stands, signed by John Keener and payable to himself, is of no more avail to hold Henry Weller to any liability, than a blank form would be. A bond or other instrument of writing in which the obligee also appears as an obligor is senseless, and of no force and efficacy as a cause of action or evidence of liability : Faulkner *v.* Lowe, 2 Exch. 595 ; Teague *v.* Hubbard, 8 B. & C. 345 ; Moffatt *v.* Van Mullingen, 2 Chitty 539 ; Grahame *v.* Harris, 5 G. & J. 489 ; Eastman *v.* Wright, 6 Pick. 316, 321. The reasoning of the court below is : That the error was apparent on the

face of this paper, and therefore Weller is to be bound to any agreement shown to have been the intention of Keener. We submit, that even to an experienced business man or lawyer this paper would appear perfectly consistent with Weller's understanding of it. It is a frequent method for a man to draw a note to his own order, sign it himself with his sureties and then indorse it over to the lender of the money.

*E. D. Ziegler*, for appellee.—The court had power under the Acts of Assembly cited to make the amendment ordered July 11th 1882. The name of John Keener, payee in the note, appeared by mistake as one of the defendants. The amendment did not change the contract. Keener did not intend one contract and Weller a different one. The mistake of Keener's name on the foot of the note was apparent on the face of the paper. Weller made no inquiry as to the fact of Keener's name at the bottom of the note, nor was there any misrepresentation or undue influence used. He was informed that he was to go as security for the loan of the money from Keener, and the matter was, as the court says, open to his own inquiry, and he made none and cannot now avail himself by saying that he was misled by the appearance of Keener's name at the bottom of the note.

Mr. Justice PAXSON delivered the opinion of the court, October 18th 1883.

This was an appeal from the refusal of the court below to open a judgment entered upon a warrant of attorney. It was not denied that the appellant was a surety, and that when he signed the note it had attached to it the names of John Keener and Daniel Miller as makers. In point of fact Keener was the payee, Miller the principal, and the appellant his surety. It was alleged by the appellee that the name of Keener as maker was signed by mistake, and upon his own motion the court below subsequently amended the record of the judgment by striking out his name, leaving it to stand as a judgment of John Keener *v.* Daniel Miller and Henry Weller. This amendment and the refusal of the court to open the judgment are assigned for error.

It was urged that the amendment came within the second section of the Act of 4th May 1852, P. L. 574, which provides: "That all actions pending or hereafter to be brought in the several courts of this commonwealth, and in all cases of judgments. entered by confession, the said courts shall have power in any stage of the proceedings to permit amendments by changing or adding the name or names of any party plaintiff or defendant whenever it shall appear to them that a mistake

[Weller's Appeal.]

or omission has been made in the name or names of any such party."

The Act of 12th April 1858, P. L. 243, declares that the second section of the Act of 1852, above cited, "shall be so construed as to authorize the said courts where by reason of there being too many persons included as plaintiffs or defendants by mistake, as will prevent the cause from being tried on its merits, to permit an amendment by striking out from the suit such persons as plaintiffs or defendants."

Statutes of amendment very properly receive a liberal construction. But amendments which deprive the opposite party of any valuable right, should not be allowed: Kille v. Ege, 1 Norris 102. Has the appellant been injured by the amendment or deprived of any valuable right? He alleges that he signed the note on the strength of Keener's name, knowing him to be responsible. Even if this be so, appellant would not be relieved unless some fraud was practiced upon him. It is not pretended there was any collusion between Keener and Miller. The appellant knew, when he signed the note, that he was becoming bail for Miller. He knew the latter expected to raise money upon the note. If he had read the note he would have seen that Keener was the payee. This of itself was sufficient to put the appellant upon inquiry. It is true the note of Keener to his own order was regular and might have passed from hand to hand without comment. But when Miller took such a note to appellant and asked him to become bail for him (Miller) upon it, the case is widely different. As before stated, the object of the transaction was to enable Miller to get the money from some one. From whom could he get it but Keener? The note was payable to his order, and could not be used without his indorsement. A man of ordinary intelligence could not have been deceived by Keener's name appearing on the note as maker. In any event there was such an irregularity as to put appellant upon inquiry. If he had made such inquiry, he would have ascertained the truth; that Miller was to get the money from Keener, and that he (appellant) was becoming bail for Miller to Keener.

That the appellant was an illiterate man and understands the English language imperfectly does not affect the case, in the absence of any fraud practiced upon him. No one is bound to sign an instrument which he does not understand. If, however, he does sign it without asking to have it read or explained to him, he is bound by it: Thoroughgood's Case, cited 17 P. F. S. 389. The courts have gone far enough in relieving men from their obligations upon the plea of ignorance. The appellant intended to become bail for Miller. He might have known, and would have known, if he had asked the question, that

[Wilson *v.* Van Leer.]

the money was to come from Keener. This would have made it clear that the signature of the latter as maker was a blunder. We find no error in this record.

Judgment affirmed.